JohNsow, J.
The right of a feme covert, with the consent of her husband, to carry on a separate trade, is sanctioned by the usage of the country, and the current of judicial decisions, and is evidently derived from the custom of London, and that custom translated from the Liber albus in the town clerk’s office, is as follows: — “When a feme covert of a husband, useth any craft in the said city, on her sole account, whereof the husband medleth nothing, such a woman shall be charged as a feme sole, concerning every thing that toiieheth the craft, and if the husband and wife he impleaded in such case, the wife shall plead as a feme sole, and if she is condemned, she shall be committed to prison until she has made satisfaction, and the husband and his goods, shall not in such case, be charged nor impeached.” Lavie, et al. v. Phillips et al. 3 Bur. 1776. This custom, like all others which derogate from the common law, is to he taken strictly and not extended hy construction, and it seems, *430 if the husband in any manner, intermeddle or con- ' cern in the trade of the wife, the ease will not be protected by the custom. He may however, determine ^i® wife’s trading in future, but not in retrospect “nor can he do any act to injure her creditors, who are entitled to be satisfied out of her property in trade ; but after those demands are satisfied, he may, by law, possess himself of the surplus ofher property; for the custom does not extend to this point, it regarding only trade and commerce." Langham v. Bewett, Cro. Car. 68. Lavie v. Phillips, 3 Bur. 1782.
In the incorporation of this custom into our system of jurisprudence, it must, in the absence of any legislative enactments, judicial decisions, or general usage to the contrary, he understood as having been adopted with all its restrictions and limitations, as well as its privileges and immunities; and in relation to this case, it is only necessary to refer to the limitation that it regards trade and commerce only. The cases of M’Grath v. Robinson, 1 Eq. Rep. 445, and Miller v. Tollison, Harp. Eq. Rep. 145, are relied on as showing that the custom has been so extended, as to enable the wife to acquire a separate property, by other means than that of trade and merchandize. In the former case, it is expressly stated that the parties resided in Charleston, and that Mrs. Robinson carried on a separate business, and by that means, acquired property, and although the nature of the business is not expressly stated, it is a reasonable inference that it was some trade or commerce, and the more so, as that is the only means of reconciling the judgment of the court to the custom; we will not at least, raise an inference that would render that judgment inconsistent with the law. In Miller v. Tollison, the judgment of the court is against the rights of the wife as a feme sole trader, and besides that, it is a well known fact, that the object of Mrs. Tollison, in taking upon herself the character of sole trader, was to carry-on the business or trade of tavern keeping, in which her husband had been engaged before his insolvency. These cases do not therefore sustain the position. *431 Since tbe Act of 1823, (see page 35,) the constitution of married women as free dealers, has been very com-fflon, and I believe that there are but few married men who have become insolvent, who have not attempted to shelter themselves under this cover; and from what has been passing in the country, one would be led to consider that this act had constituted a new era in the history of family arrangements. But neither that act, nor any other, and there are several relating to the subject, has confered any new power on married women — on the contrary, they only recognize the existence of the custom, and provide regulations to prevent abuses under cover of it. This is particularly so with regard to the Acts of 1823 & 1824. (pages 23 & 35.) The first requires, that notice of the intention of the wife to become a free dealer, shall be published in the newspapers for one month, and the last, that the name, place of residence, and occupation of the husband, shall be inserted. Thus operating restrictively, rather than énlarging the rights of married women.
The deed by which Mrs., M’Daniel is constituted a free dealer, is wide enough to embrace almost every business in which she could engage, “ to exercise any business, or trade as a free and sole trader, or dealer in buying and selling, bartering, exchanging, traffic-ing and retailing, and conveying all kinds of goods, wares and merchandizes, commodities and estates, real and personal,” &c. But Mrs. M’Daniel never carried on any business immediately connected with trade and commerce. “ She carried on a farm, hired overseers, bought negroes, sold the crops, purchased supplies, and opened accounts in her own name,” &c. in looking into the history of the custom of London, it will be found that it was one of the many innovations on the common law, to favour trade and commerce, and never was intended to apply to any other pursuit in whieh the wife might engage; and it is obvious, that if it was allowed to prevail to-the extent which is claimed for it in this case, it would at once supercede the many guards which the Legislature have placed *432 around Marriage settlements, and would lead to all :.be abuses and frauds that they were intended to prevent. No one would ever think of entering kilo a suar-I'iage settlement, with a view to a family provision, when all the purposes could be as well effected by constituting the wife a sole trader.
In the case of M’Grath v. Robinson, the wife purchased both real and personal property, and that circumstance has been relied on as showing an analogy between the two cases. But as I understand that case, the surplus profits of the trade of the wife was so invested, and I see no reason why she might, not invest it in this way, as well as any other. But here there was no trade, and consequently no profits derived from it, to be invested. I am therefore very clearly of opinion, that the right of Mrs. M’Daniel in the negro in dispute, is not protected by the custom, and that the common law rule, which made the property purchased by her the husband’s, must prevail.
It is conceded that the whole case is fairly before the court, and it is obvious that the plaintiff is not entitled to recover. In justice to both the parties, anon-suit ought to he granted, and thus put an end to further litigation, and it is accordingly so ordered.
O’Neall & Harper, Js. concurred.